# Richmond.

## JOHNSTON & CHEEK v. GREEN, TRUSTEE.

### JANUARY 24, 1904.

#### Absent, Cardwell, J.

1. TRUST FUNDS—*Disbursements*—*Deposit with Preferred Creditor*—*Interest.*—Where a trustee deposits the trust fund, subject to his check, with a banker who is a preferred creditor, and the account is an active and varying one, subject to no special agreement between the parties, and a decree is pronounced directing the trustee to deduct his commission, a reasonable fee to his attorneys, and the unpaid costs of suit, and to distribute the balance to the creditors according to their rights and priorities as ascertained by a commissioner's report which has been confirmed, the debt of such banker is not to be credited by any portion of such deposit until actual payment thereof is made to him, although he is the first preferred creditor, the amount of the deposit large, and actual payment long delayed. He has no control over the fund, and the amount to be paid to him is not ascertained. The trustee alone is chargeable with the disbursement of the fund, and interest continues to run on the creditor's debt until payment is actually made.

Appeal from a decree of the Corporation Court of the city of Danville in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*A. C. Edmund* and *Berkeley & Harrison,* for the appellant.

*Peatross & Harris, E. E. Bouldin, Guthrie & Guthrie, Julian Meade, Withers & Green, C. U. Williams, Cabell, Cabell & Custer* and *James L. Tredway,* for the appellees.

HARRISON, J., delivered the opinion of the court.

In January, 1897, John W. Holland conveyed a large estate to Berryman Green, trustee, to secure numerous creditors. In March of the same year, the trustee filed a bill asking the direction of the court in administering his trust. In this assignment, Charles L. Holland, doing a banking business under the name and style of Johnston and Cheek, was given priority over all other creditors for a debt of $20,000.00, which seems not to have been questioned by any one.

It appears that the trustee kept his bank account with the banking house of Johnston and Cheek from the time the suit was instituted until the final settlement of his accounts. On June 4, 1900, the trustee collected and deposited to his credit with Johnston and Cheek $16,393.52, under a decree which directed him to deduct therefrom his commissions, a reasonable fee to be paid his attorneys, the unpaid costs of the suit, and to distribute the balance to the creditors, according to their rights and priorities, as ascertained by the report of the commissioner then filed in the cause and confirmed. Checks were drawn by the trustee against this account, and other deposits added thereto, but the larger part of the deposit of June 4, 1900, remained in the bank until January 13, 1902, when Green, trustee and receiver of the court, gave to Victor and Patterson, substituted trustees, his check for $14,193.62, the balance then standing to his credit in the bank, and on the same day the substituted trustees paid this sum to Johnston and Cheek on account of their preferred debt of $20,000.00.

The contention of the general creditors is that, inasmuch as the deposit in question was made in the bank of Johnston and

Cheek, and as the balance of such deposit would, after the payment of commissions, reasonable attorneys' fees, and unpaid costs, have been payable to the bank as the preferred creditor, therefore such balance should be credited upon the preferred debt due to the bank, as of June 4, 1900, the date of the deposit, rather than as of January 13, 1902, the date of the formal payment by the substituted trustees to Johnston and Cheek; that the trustee having failed to distribute the deposit as directed by the decree, and allowed the same, or the greater part thereof, to remain in bank until January, 1902, the bank had thereby derived all the benefit that it would have received had the balance in question been promptly and formally paid over, and should therefore be required to account for such balance as a credit upon its debt as of the date of the deposit.

We are of opinion that the lower court erred in sustaining this contention. The record shows that the account kept by Green, trustee and receiver, at the bank of Johnston and Cheek was an active and varying one, and was subject to no special agreement, but was received and treated as the accounts of all other customers of the bank, whose deposits were at all times subject to check. The decree relied on as dedicating the deposit of June 4, 1900, to the payment of the debt due to Johnston and Cheek cannot be so construed. The decree does not direct any certain sum to be paid to the creditors. Indeed, the fund was not in the hands of the trustee. He was directed to collect certain moneys due to the fund, and to deduct his commissions, pay reasonable attorneys' fees, pay the unpaid costs of suit, and, lastly, to distribute the balance to the creditors, according to their rights and priorities. The several payments to be made by the trustee were not ascertained by the decree, were uncertain in amount, and some of them left to the discretion of the trustee by the direction to him to pay reasonable attorneys' fees. This item of attorneys' fees has since been the subject of litigation, and is now undetermined and pending on appeal in another case

before this court.   The disbursement of this fund was a duty imposed by the trust deed and the decree of the court upon the trustee, and the appellant was not only under no obligation to assume that responsibility, but its assumption would have been an unwarranted interference with a fund under the exclusive control of the court and its officer.   The deposit in question did not belong to Johnston and Cheek.   Under the decree no part of it was to be distributed to creditors until certain items of expense and costs had been paid by the trustee.   This officer would himself, doubtless, have been unable to determine and settle these several items on the day the deposit was made, and yet it is insisted that the bank, ignoring the trustee and receiver, should have assumed the responsibility of determining these several matters, and should have appropriated a part of this trust fund to its own use as of the day the deposit was made. Johnston and Cheek would have had no right to apply money deposited in their bank by a bonded receiver and trustee of the court, in a pending suit, to the payment of a debt they had proved in that suit.   *Railroad Co.* v. *Smith,* 50 Mich. 112, 15 N. W. 39; *Bank* v. *Evans & Dorsey,* 9 W. Va. 373; *Peoples* v. *Remington,* 59 Hun. 307, 12 N. Y. Supp. 829.

The case last cited is very much in point.   That was a suit to liquidate the affairs of a firm, among whose creditors was the Ilion Bank.   In the regular course of the liquidation, a dividend which should have been paid to the bank, amounting to nearly $50,000.00, was delayed for a year or more, and during this period the receiver of the court kept on deposit at the Ilion Bank a part of the trust funds largely in excess of the dividend; and it was there contended that because the bank had the use of the funds it was not entitled to interest on the dividend, but the court held that the arrangement between the bank and the receiver was one of mutual benefit and convenience, and whether one received more benefit than the other could not be enquired into; that it was in the nature of a contract between the parties with which the court had no right to interfere.

In the case at bar the report of the commissioner filed September 24, 1902, properly credited the debt due appellant with the payment in question, as of January 13, 1902, the day it was actually paid by the substituted trustees, and the exceptions taken to that finding should have been overruled, and the report in that respect confirmed.

For these reasons the decree appealed from must be reversed, and the cause be remanded for further proceedings in accordance with the views expressed in this opinion.

*Reversed.*